1  David Dehnert, SBN 214243
   Attorney at Law
2  838 Venezia Ave.
   Venice, California 90291
3  Telephone:  310/822-3222
   Facsimile:  310/577-5277
4

5  Lestor J. Marston, SBN 081030
   Rapport and Marston
6  P.O. BOX 488
   405 West Perkins Street
7  Ukiah, CA 95482
   Telephone: 707/462-6846
8  Facsimile: 707/462-4235

9  Attorneys For Plaintiff
   Ralph Martinez
10

11

12             **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14                 **SAN DIEGO DIVISION**

15

16 RALPH MARTINEZ,                  ) CASE NO. 3:08-cv-00565-BEN-CAB
                                    )
17                                  ) CLASS ACTION
            Plaintiff,              )
18                                  ) FIRST AMENDED COMPLAINT FOR
19 vs.                              ) DECLARATORY AND INJUNCTIVE
                                    ) RELIEF FOR VIOLATION OF
20 ARNOLD SCHWARZENEGGER, Governor, ) RELIGIOUS LAND USE AND
   MATTHEW CATE, Secretary of the   ) INSTITUTIONALIZED PERSONS ACT
21 Department of Corrections and    ) OF 2000, 42 U.S.C. § 2000CC,
   Rehabilitation, LARRY SMALL,     ) ET SEQ., FIRST AMENDMENT OF
22 Warden, Calipatria State Prison, ) THE U.S. CONSTITUTION, ART. 1
   JOSE BUILTEMAN, Associate Warden,) § 4 OF THE CALIFORNIA
23 Calipatria State Prison, T. BOREM,) CONSTITUTION, AND §§ 5009(a)
24 Correctional Sergeant, Calipatria ) AND 5030.1(a) OF THE
   State Prison,                    ) CALIFORNIA PENAL CODE
25                                  )
            Defendants.             ) PLAINTIFF DEMANDS A TRIAL
26 _____) BY JURY

27

28 / / /

---

First Amended Complaint - 1

## INTRODUCTION

1.  This is an action for declaratory and injunctive relief from the substantial burdens that defendants have imposed on plaintiff, and classes of others who are similarly situated, who has been denied free exercise of his religious beliefs through the defendants' customs, policies and practices in the California Department of Correction and Rehabilitation ("CDCR") prison system. Defendants have denied plaintiff access to and use of fundamental elements of Native American spiritual practices, notwithstanding CDCR policies that recognize the necessity and importance of these elements, which include the use of tobacco and other sacred plants in daily prayer and for pipe ceremonies, the Sacred Sweat Lodge, outdoor ceremonies on special days, provision of a Native American Spiritual Advisor, and the ability to obtain Religious Items.

2.  Plaintiff is incarcerated under the authority of the State of California, at the Calipatria State Prison ("Calipatria"). This action challenges defendants' customs, practices and policies of denying plaintiff's rights to practice his religious beliefs.

3.  Plaintiff exhausted all administrative remedies for the issues raised herein by filing Administrative Inmate Appeals, which were denied at the Director's Level of review. Plaintiff has no administrative remedy to redress the ongoing violation of his free exercise rights under the First

Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), Article 1, Section 4 of the California Constitution, or §§ 5009(a) and 5030.1(a) of the California Penal Code.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction in this case under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000cc-2(a) and directly under the Constitution. It has supplemental jurisdiction under 28 U.S.C. § 1367.

5.   This Court is authorized to order declaratory and injunctive relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

6.   Venue properly lies before this Court under 28 U.S.C. § 1391 in that the events giving rise to these claims occurred or will occur within this judicial District.

7.   Intradistrict Assignment. Assignment to the San Diego Division of this District is proper because a substantial portion of the events, conduct and omissions giving rise to this action occurred in this District.

## PARTIES

8.   Plaintiff Ralph Martinez is Native American and an enrolled member of the Soboba Band of Luseno Indians, a federally recognized Indian Tribe. He is incarcerated at the Calipatria State Prison. Mr. Martinez is a sincere believer in and practitioner of Native American spiritual beliefs, which

are commonly referred to as the Native American Church or Native American Religion. Mr. Martinez continues to be subjected to the defendants' unlawful conditions, actions, policies and procedures that deny him the right to practice his religion.

9.   Each of the defendants acted under color of state law as to the matters set forth herein. All of the conditions, policies and practices complained of herein are the result of and pursuant to specific decisions, official policies or customs of defendants. Each of the defendants knows of and is responsible for the conditions, policies and practices set forth herein.

10.   Defendant Arnold Schwarzenegger is the Governor of the State of California. He is the chief executive officer of the State and has the ultimate authority over the operations and policies of the California Department of Corrections and Rehabilitation. He is sued individually and in his official capacity.

11.   Defendant Matthew Cate is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), appointed by the Governor to that position on May 16, 2008. In his capacity as Secretary, defendant Cate exercises administrative control of and has responsibility for the operation of all correctional institutions, facilities, and programs under CDCR's administration, including Calipatria.

Defendant Cate was and is at all relevant times personally and directly involved in decisions to establish and to maintain the conditions, policies, and practices at Calipatria complained of herein and in decisions regarding the hiring, firing, training and supervision of the Calipatria Warden and Calipatria staff. Furthermore, based on plaintiff's information and belief, plaintiff alleges that defendant has had actual knowledge of the conditions complained of herein and has been aware that plaintiff's rights have been violated, but has failed to conduct a reasonable inquiry into the deficiencies that are causing plaintiff's injuries and has not undertaken reasonable means to correct or eradicate those deficiencies. He is sued individually and in his official capacity.

12.   Defendant Larry Small is the Warden of the Calipatria State Prison. In that capacity, defendant Small is responsible for the administration and day-to-day operations of Calipatria. Defendant Small was and is at all relevant times personally and directly involved in decisions to establish and to maintain the conditions, policies, and practices at Calipatria complained of herein and in decisions regarding the hiring, firing, training and supervision of Calipatria staff. Furthermore, based on Plaintiff's information and belief, plaintiff alleges that defendant has had actual knowledge of the conditions complained of herein and has been aware that plaintiff's rights have been violated, but has failed to conduct a reasonable inquiry into

the deficiencies that are causing plaintiff's injuries and has

not undertaken reasonable means to correct or eradicate those

deficiencies. He is sued individually and in his official

capacity.

13.   Defendant Jose Builteman is the Assistant Warden of

Calipatria. In that capacity, defendant Builteman is

responsible for assisting the Warden with the administration

and day-to-day operations of Calipatria, and he is responsible

for the administration of religious and spiritual services for

inmates at Calipatria. Defendant Builteman was and is at all

relevant times personally and directly involved in decisions to

establish and to maintain the conditions, policies, and

practices at Calipatria complained of herein and in decisions

regarding the hiring, firing, training and supervision of

Calipatria staff. Furthermore, based on Plaintiff's information

and belief, plaintiff alleges that defendant has had actual

knowledge of the conditions complained of herein and has been

aware that plaintiff's rights have been violated, but has

failed to conduct a reasonable inquiry into the deficiencies

that are causing plaintiff's injuries and has not undertaken

reasonable means to correct or eradicate those deficiencies. He

is sued individually and in his official capacity.

14.   Defendant T. Borem is a Correctional Sergeant

employed at Calipatria. In that capacity, Defendant Borem is,

and was at all relevant times herein, employed as a

Correctional Sergeant at Calipatria. Defendant Borem is responsible for overseeing and processing all spiritual and religious materials received by Calipatria inmates from outside the prison, primarily through the mail, and he is personally and directly responsible for the implementation of policies and procedures as to processing these materials. He is sued individually and in his official capacity.

15.  Defendants Schwarzenegger, Cate, Small, Builteman and Borem are hereinafter sometimes referred to as "defendants."

16.  Defendants are legally responsible, in whole or in part, for the operation of and for conditions at Calipatria; for creating and maintaining an environment that reasonably allows for the free exercise of religious practices. The defendants also are entrusted with the responsibility for making policies and/or for implementing religious exercise regulations and policies. Defendants are entrusted with the responsibility for enforcing, and ensuring that their subordinates, agents and employees enforce, such laws and policies by taking prompt remedial action following acts of inappropriate behavior or denial of certain religious practices. Defendants are responsible for the hiring, firing, training and supervision of Calipatria staff.

17.  Upon information and belief, each of the defendants either approved, implemented, or otherwise allowed for the unlawful conditions, actions, policies and procedures at

Calipatria that violated plaintiff's free exercise rights.

Defendants failed to make, to implement, or to enforce, and to

ensure that their subordinates, agents, and employees enforced,

the above-described laws and policies or to take necessary and

prompt remedial action following knowledge or reports of denial

of religious practices.

**FACTUAL ALLEGATIONS**

Fundamental Spiritual Beliefs of Native Americans and the
Requirements for Plaintiff Believers and Practitioners

18.   Plaintiff Ralph Martinez is a Native American and a

believer in and practitioner of Native American religious and

spiritual beliefs. He is incarcerated at Calipatria, under the

authority of the CDCR.

19.   The religious beliefs and practices among the 556

different federally recognized Indian tribes are diverse, but

some beliefs and practices are syncretic and common to all, and

are referred to herein as the Native American Religion.

20.  The Native American Religion includes interaction with

the natural world which is imbued with supernatural meaning,

natural objects have living spirits, and ceremonial rituals

ensure that communal and individual prosperity continues.

21.   Spiritual traditions and principles help define

Native American cultures, with no distinction between spiritual

life and cultural life. Wearing long hair, headbands, and

certain traditional clothing, talismans and totems, and the

craft of traditional bead and leather work are as much
spiritual practices as cultural expressions.

22.  Native American Religion ceremonies are the primary
vehicles of spiritual expression, and a ceremonial leader or
elder ensures the authenticity of religious observances. A
spiritual leader guides and teaches practitioners and holds an
important position, having had a vision to hold this position
combined with wisdom and good judgment.

23.  Symbols and sacred objects are fundamental to Native
American spiritual practices.

24.  Native Americans believe in a benevolent Creator, or
Great Spirit, from whom all things come, and who always cares
and listens.

25.  All things in nature are central to Native American
Religion beliefs, and communing with spirits and performing
ceremonies occurs outdoors or directly in contact with Mother
Earth. Natural objects, such as shells, stones, feathers,
plants, animal bones, claws and teeth have significant roles in
spiritual practices because they are reminders of certain
important principles or qualities and are natural reservoirs of
spiritual power.

26.  In the Native American Religion each day is a sacred
day of thanksgiving. Personal prayer and thanksgiving is a
sacred rite, central to reverence for the Creator and all the
sacred manifestations of nature.

27.  The daily burning of sweetgrass, sage, cedar, tobacco copal and kinnikinnick is a sacred practice of the Native American Religion for spiritual cleansing, blessing and purification.

28.  Many Native American Religion practitioners carry or wear a medicine bag that may contain stones, animal parts, herbs, seeds or corn kernels. The spirits of these objects become part of the wearer, and the medicine bag is an invocation to the Creator to continually be with and guide him.

29.  Of the many plants and herbs used ritualistically and ceremonially, four plants are sacred and especially revered in daily living for the Native American Religion. The Great Spirit instructed Native Americans to use tobacco, sage, sweetgrass, and cedar smoke as a physical reminder of the Creator's omnipotent presence and as a conduit to sacred ways. Tobacco is the most important of these sacred plants, because it is believed to open the door to the Creator, and when used to make smoke, it is one of the most sacred of plants for Native Americans. Ceremonies using tobacco invoke a relationship with the energies of the universe, and ultimately the Creator. Some Native Americans use a form of tobacco known as kinnikinnick, which is a mixture of red willow, yellow willow, cedar, tobacco bear berries and other herbs.

30.  There are four traditional tobacco uses: prayer, offerings, purification and showing respect. Tobacco is offered

to the fire for smoke, set on the ground, or sprinkled, all to show humility, gratitude, and innocence, and as a means of communication. When smoked in a pipe, tobacco communicates to the Creator and to ancestors by carrying prayers to the Sky World. The smoke is sacred and not inhaled. Tobacco is sprinkled on the drum after prayers to give thanks the Creator. Tobacco is often held in hand in daily prayers of gratitude.

31.  Tobacco ties, small colored pieces of cloth containing tobacco and symbolizing prayers, are offered to the fire or to Mother Earth on behalf of the Sacred Circle. Native Americans carry the ties or tie them to the Sweat Lodge, and often burn them during Sweat Lodge ceremonies to carry prayers to the Creator.

32.  Native tobacco used spiritually is a different species than common tobacco sold in smoke shops and stores. Cigarette, cigar and pipe tobacco are not from the same sacred plant used in the Native American Religion, which does not contain nicotine or additives. If inhaled, it does not produce the same effect that generally causes addiction to common tobacco products.

33.  The Sacred (Ceremonial) Pipe is central to Native American Religion. It is a revered spiritual object that may be used only for offerings and prayers. The Creator's spirit is considered to be in tobacco, and when smoked in the Sacred Pipe, the spirit as smoke enters the body, refreshes it, and

then travels to the sky laden with thanksgiving. For thousands of years Native Americans communicated with their Creator in this manner.

34.   The Native American Religion holds certain days as sacred, including the full moon, new moon, the solstices, and the equinoxes. On these days practitioners commune with one another and with the spirits, and they perform special rituals and ceremonies. This includes an annual outdoor ceremony commonly known as a Pow-Wow.

35.   An important aspect of the Native American Religion is the reverence for nature and the collection of sacred manifestations of nature from Mother Earth. These sacred items are shared among practitioners in the greater Native American community.

36.   The Native American Religion incorporates handicrafts using beads, leather and other traditional materials, which form a part of spiritual growth and healing. The items produced are sacred and spiritual, which draw from the spirit and energy invested in the object while creating it.

37.   As a sincere practitioner of the Native American Religion, plaintiff must pray on a daily basis, he must smoke the Sacred Pipe during the Sacred Sweat Lodge at least weekly, he must have an annual Pow-Wow and ceremonies for the solstices, equinoxes and full and new moons, he must have a Native American Spiritual Leader ("NASL"), and he must

participate in Native American handicrafts. It is imperative

that plaintiff use sacred tobacco and other sacred plants in

his prayers and for the Sacred Pipe, and have access to tobacco

for these purposes. It is imperative that plaintiff participate

in the Sacred Sweat Lodge at least weekly. It is imperative

that plaintiff use an outdoor area for an annual Pow-Wow, and

for solstices, equinoxes, full and new moon ceremonies, and

that ceremonial food for these ceremonies be consumed

communally outdoors during these ceremonies. It is imperative

that plaintiff have access to a NASL to administer and guide

plaintiff's religious ceremonies and practices. It is

imperative that plaintiff receive spiritual packages from the

Native American community. If it is determined that plaintiff's

access to tobacco for daily prayers is allowed only through a

NASL, then it is imperative that an NASL is on staff to

administer those services, as with the other religions at

Calipatria.

Calipatria And Its Policies And Procedures

    38.  Calipatria is one of 33 adult prisons in California

operated by the CDCR, located in Imperial County, California.

    39.  Calipatria's mission is to provide for the

confinement of general population Level I (minimum custody) and

Level IV (maximum custody) inmates who are willing to

participate in vocational and/or academic programs, prison

industries or support services.

40.  Calipatria State Prison opened in January 1992, and covers a total of 1,227.5 acres (with the prison on 300 acres). As of Fiscal Year 2005/2006, Calipatria staff totaled 1,143 and its annual operating budget was $123 million. As of September 2007, Calipatria had a design capacity of 2,208 and a population of 4,168.

41.  Calipatria is designated a CDCR prison that provides inmate programs, including vocational, academic, and "other" programs. Under "other" programs, "religious" programs is listed.

42.  Calipatria is comprised of six separate facilities identified as Facilities A through F. Inmates are confined to each facility, and the facilities are operated semi-independently of one another.

43.  As of December 30, 2005, CDCR terminated the receipt of inmate packages from family members to prisoners in CDC prisons. If prisoners wish to obtain packages, they may obtain them only from prison-approved vendors.

44.  An exception to inmate purchases is made for "Special Purchases" using funds from inmate trust accounts. Special Purchases of "Religious Items" and handicraft materials are not supposed to be counted as personal property packages made from departmentally approved, special purchase vendors. The prison assesses a 10 percent service charge for some Special

Purchases, including for handicraft material. Calipatria is required to create and make available to all inmates procedures for Special Purchases. Purchases of Religious Items, and handicraft material require an inmate to obtain prior approval. Religious Items must be approved by designated staff and the institutional chaplain, and are received by the institutional chaplain and inspected by designated staff prior to issuance.

45.   Defendants' customs, practices, policies and procedures prohibit plaintiff from obtaining sacred materials from the greater Native American community, even if donated by a religious organization, and restrict all purchases of sacred artifacts and sacred plants to several prison-approved commercial vendors.

46.   Defendants' customs, practices, policies and procedures restrict Plaintiff's purchase of Religious Items to $200 per quarter, per facility at Calipatria. For example, the prisoners housed in Facility B at Calipatria may purchase up to $200 in leather and beads from Calipatria-approved vendors every three months. They may not exceed the $200 limit for any other purchases during that quarter.

47.   Defendants' customs, practices, policies and procedures provide recognized religious groups with a trust account and funding used for the religious purposes of the group, and on information and belief, plaintiff alleges that defendants have refused to fund the plaintiff's Native American

group due to the absence of the NASL.

48.  Defendants' customs, practices, policies and procedures provide plaintiff's Native American group in Facility B with fire wood for the Sacred Sweat Lodge, but often there is no wood or insufficient wood for the weekly Sacred Sweat Lodge, or the wood is inadequate for ceremonial purposes, because it includes chemical-laden commercial pallets or quick burning roots and twigs that cannot sustain a fire for the duration of the Sacred Sweat Lodge ceremony. Consequently, plaintiff's participation in the weekly Sacred Sweat Lodge is frequently cancelled or diminished.

49.  Plaintiff asserts and alleges, based on good faith and belief, that the defendants' customs, practices, policies and procedures for providing fire wood for the Sacred Sweat Lodge to Facility B at Calipatria is the same for all facilities at Calipatria.

50.  Defendants' customs, practices, policies and procedures restrict plaintiff's access to Religious Items, by prohibiting Plaintiff from purchasing and using red and blue beads for their spiritual handicraft.

51.  Defendants' customs, practices, policies and procedures require that defendants carefully search all packages that come into a prison, regardless of their source or destination.  Notwithstanding, defendants restrict "spiritual packages" to approved vendors only.

52.   California Penal Code § 5031.1 prohibits the possession and use of tobacco by inmates under the jurisdiction of the CDCR effective July 1, 2005, except when tobacco is used for religious ceremonies, which use is supposed to be regulated by regulations.

53.   Title 15 of the California Code of Regulations, §§ 3187 and 3188, were enacted by the Defendants to prohibit possession and use of tobacco by inmates within the confines of any prison, except for approved religious services.

54.   Calipatria has implemented institutional regulations restricting the Plaintiff's possession and use of sacred tobacco and other herbs as set forth in Department Operation Manual ("DOM") Supplement 53050, revised as of March 2006.

55.   Defendants customs, practices, policies and procedures are to withhold from plaintiff sacred tobacco in the "Central Control Complex" locker at Calipatria, denying plaintiff access to or possession of sacred tobacco and other plants for personal prayer, cleansing, purification, blessing, offering and thanksgiving, and restricting access to sacred tobacco to weekly ceremonies.

56.   Defendants customs, practices, policies and procedures restrict plaintiff's use and possession of sacred tobacco to Sacred Sweat Lodge ceremonies only, which are held no more than once per week.

57.   Defendants customs, practices, policies and

procedures deny plaintiff access to the Sacred Sweat Lodge during times of prison lockdown. Calipatria was under lockdown from August 2005 through June 2006. During that time, Defendants suspended all Sacred Sweat Lodge ceremonies. Consequently, Defendants denied Plaintiff all access to sacred tobacco.

58.  Defendants customs, practices, policies and procedures are to routinely cancel Sacred Sweat Lodge ceremonies for what plaintiff is informed of and believes to be operational reasons. For example, defendants cancelled the Sacred Sweat Lodge at Calipatria, Facility B, on June 11, June 18, July 2, July 30, August 20, September 3, December 24, and December 31, 2006, and February 4, September 9, and December 9, 2007. Consequently, defendants denied plaintiff all access to sacred tobacco at these times.

59.  Plaintiff asserts and alleges, based on good faith and belief, that the defendants cancelled Sacred Sweat Lodge Ceremonies at other Calipatria facilities for operational reasons. Consequently, defendants denied plaintiff all access to sacred tobacco at these times.

60.  Defendants' policies and regulations created the position NASL, either as a paid employee or as a volunteer, to coordinate and administer Native American spiritual practices, obtain Religious Items, and perform religious ceremonies.

61.  Defendants' customs, practices, policies and

procedures restrict all access to the sacred tobacco for the Sacred Sweat Lodge to the prison Chaplain or NASL. Defendants have denied and continue to deny plaintiff access to the sacred tobacco for the Sacred Sweat Lodge because the Chaplain and the NASL have been absent. For example, defendants denied plaintiff access to the sacred tobacco for use in the Sacred Sweat Lodge at Calipatria, Facility B, on September 24, 2006, and May 6, July 18, August 26, and September 23, 2007, allegedly due to the absence of the Chaplain or NASL.

62.  Calipatria does not have a NASL and has not had a NASL for approximately two years. On information and belief, plaintiff alleges that defendants have intentionally refused to hire a NASL, thereby denying plaintiff the right to practice his spiritual beliefs. Plaintiff's spiritual needs are administered by a Calipatria Chaplain who is not Native American and who is not a believer in or a practitioner of the Native American Religion. Plaintiff alleges and believes that despite any good intentions of the Calipatria Chaplain, plaintiff's spiritual needs have not been and cannot be realized without a NASL, particularly in regard to Sacred Pipe ceremonies and Sacred Sweat Lodge ceremonies.

63.  Plaintiff asserts and alleges, based on good faith and belief, that the defendants denied prisoners access to sacred tobacco at other Calipatria facilities due to the absence of a Chaplain or NASL.

64.  Defendants' customs, practices, policies and procedures require that the NASL request in writing the Calipatria Warden's approval for the Pow-Wow and all Native American ceremonies in connection with the solstices, equinoxes, full and new moons.

65.  Defendants' customs, practices, policies and procedures prohibit Plaintiff from eating outdoors communally during ceremonies that include the Pow-Wow and solstices, equinoxes and full and new moon ceremonies. Defendants' policies require that the Plaintiff interrupt their outdoor ceremonies and continue them indoors where food is served.

66.  Defendants have failed to draft, adopt and implement governing policies and procedures necessary to ensure the free exercise of religion.

67.  Upon information and belief, CDCR has agreed on at least one occasion to take specific measures to address the conditions and lack of policies, procedures and training for CDCR staff to accommodate religious practices of Native American inmates in the CDCR system.

68.  The RLUIPA mandates that institutionalized individuals shall have the ability to participate in religious ceremonies. The absence of rules and regulations has enabled a culture of indifference to the religious practice needs of plaintiff, with requests for a NASL and necessary items of the Native American religions systematically ignored or denied by

defendants. Prison staff are not properly trained, lack

policies and procedures to guide their decisions and routinely

deny access to religious services and items.

## CLASS ALLEGATIONS

69. Plaintiff brings this action on behalf of himself

and all other persons similarly situated pursuant to Federal

Rules of Civil Procedure 23(a) and 23(b)(2). The class, as

proposed by Plaintiff, consists of:

> All Native American prisoners who are practitioners of
>
> the Native American Religion, who are now or will be in
>
> the custody of the CDCR.

70. The requirements of Federal Rules of Civil Procedure

23(a) and 23(b)(2) are met in that the class is so numerous

that joinder of all members is impracticable. Upon information

and belief, thousands of prisoners in the custody of the CDCR

are Native Americans, and many of those prisoners are sincere

practitioners of the Native American Church. All of these

prisoners are completely dependent on the CDCR to practice

their religion. Counsel for plaintiff are aware of at least

another 65 proposed class members who are similarly situated to

the named plaintiff at Calipatria alone. Counsel are aware of

dozens of others similarly situated elsewhere in other CDCR

prisons, making joinder of all plaintiffs impracticable.

71. There are questions of law and fact common to the

proposed class that predominate over any questions affecting only the individually named plaintiff, including: (1) whether CDCR's customs, practices, policies and procedures that deny weekly access to the Sacred Sweat Lodge, receipt of Religious Items, possession of tobacco violate RLUIPA, the First Amendment, Art. 1 § 4 of the California Constitution, California Penal Code §  5009(a); (2) whether the failure to hire a NASL is a violation of RLUIPA and Title 15 of California Code of Regulations; (3) whether denying Native American prisoners the right to possess tobacco constitutes denial of free exercise that is neither supported by a legitimate state purpose to restrict the prisoner's exercise of religion nor the least restrictive means to meet any legitimate state purpose, thus violating RLUIPA, the First Amendment, and Penal Code § 5030.1(a).

72. The claims of the named plaintiff are typical of the claims of the proposed class. The named plaintiff, like all class members, has been denied access to a Native American Spiritual Advisor, denied the right to possess tobacco for prayer, denied the right to access the Sacred Sweat Lodge on at least a weekly basis, denied the right to receive Spiritual Packages from the Native American community, limited to spending only $200 for Religious Items per quarter, denied the right to have certain Religious Items, and denied the right to have a trust fund budget.

73. Like the named plaintiff, members of the proposed class are suffering prejudice from the denial of their right to free exercise of their sincere religious beliefs.

74. The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members which would, as a practical matter, substantially impair the ability of other members to protect their interests.

75. The named plaintiff will fairly and adequately represent the interests of all members of the proposed class because he seeks relief on behalf of the class as a whole and has no interests antagonistic to other members of the class. The named plaintiff is represented by experienced federal Indian law attorneys who are considered able practitioners in federal constitutional and statutory adjudications.

76. The defendants have acted on grounds generally applicable to the class, thereby making final injunctive and declaratory relief appropriate to the class as a whole.

<u>**DECLARATORY AND INJUNCTIVE RELIEF**</u>

77. An actual and immediate controversy has arisen and now exists between plaintiff and defendants. The parties have genuine and opposing interests that are direct and substantial.

78. Plaintiff is or has been incarcerated by CDCR and there is a reasonable expectation that while incarcerated at CDCR plaintiff will be prevented from practicing his religion,

1  which will result in continuing injury to plaintiff and other

2  class members. Unless enjoined by the Court, plaintiff will

3  continue to be subjected to defendants' unlawful policies,

4  practices, acts, and omissions without recourse and with no

5  adequate remedy at law.

### FIRST CLAIM

Violation of Religious Land Use and Institutionalized Persons
Act, 42 U.S.C. §§ 2000cc *et seq*.

79.  Plaintiff realleges and incorporates herein each and

every allegation contained in paragraphs 1 through 78,

inclusive, as if fully set forth herein.

80.  The Religious Land Use and Institutionalized Persons

Act of 2000, provides:

> No government shall impose a substantial burden on
> the religious exercise of a person residing in or
> confined to an institution . . . even if the burden
> results from a rule of general applicability,
> unless the government demonsrates that imposition
> of the burden on that person – (1) is in furtherance
> of a compelling governmental interest; and (2) is
> the least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. §§ 2000cc-1.

81.  By severely restricting plaintiff's right to

possesses tobacco for daily prayers, to smoke the Sacred Pipe

during the Sacred Sweat Lodge at least weekly, to attend an

annual Pow-Wow and ceremonies for the solstices, equinoxes and

full and new moons, to be guided by and have communion with a

NASL, to receive Native American Religious Items, and to

participate in Native American handicrafts, defendants imposed

on plaintiff's religious exercise a substantial burden, which

neither furthers a compelling governmental interest nor is the

least restrictive means of furthering a compelling government

interest.

82.   The substantial burden is imposed in a program or

activity that receives Federal financial assistance.

83.   Defendants violated plaintiff's rights under RLUIPA.

### SECOND CLAIM

Violation of the First Amendment

84.   Plaintiff realleges and incorporates by reference

paragraphs 1 through 83 above as though fully set forth herein.

85.   The First Amendment to the United States Constitution

provides: "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise

thereof. . . ."

86.   By severely restricting plaintiff's right to

possesses tobacco for daily prayers, to smoke the Sacred Pipe

during the Sacred Sweat Lodge at least weekly, to attend an

annual Pow-Wow and ceremonies for the solstices, equinoxes and

full and new moons, to be guided by and have communion with a

NASL, to receive Native American Religious Items, and to

participate in Native American handicrafts, defendants have

denied, and continue to deny, plaintiff his right to free

exercise of his sincere religious beliefs as guaranteed by the First Amendment of the Constitution of the United States.

## THIRD CLAIM

Violation of California Constitution, Article I, Section 4

87.   Plaintiff realleges and incorporates by reference paragraphs 1 through 86 above as though fully set forth herein.

88.   Article I, Section 4 of the California Constitution provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

89.   By severely restricting plaintiff's right to possesses tobacco for daily prayers, to smoke the Sacred Pipe during the Sacred Sweat Lodge at least weekly, to attend an annual Pow-Wow and ceremonies for the solstices, equinoxes and full and new moons, to be guided by and have communion with a NASL, to receive Native American Religious Items, and to participate in Native American handicrafts, defendants have denied, and continue to deny, plaintiff his right to free exercise of his religion as guaranteed by Article 1, Section 4 of the California Constitution.

## FOURTH CLAIM

Violation of California Penal Code, § 5009(a)

90.   Plaintiff realleges and incorporates by reference paragraphs 1 through 89 above as though fully set forth herein.

91.   California Penal Code § 5009(a) provides: "It is the intention of the Legislature that all prisoners shall be

afforded reasonable opportunities to exercise religious freedom."

92.   By severely restricting plaintiff's right to possesses tobacco for daily prayers, to smoke the Sacred Pipe during the Sacred Sweat Lodge at least weekly, to attend an annual Pow-Wow and ceremonies for the solstices, equinoxes and full and new moons, to be guided by and have communion with a NASL, to receive Native American Religious Items, and to participate in Native American handicrafts, defendants denied plaintiff reasonable opportunities to exercise his sincere religious beliefs in the Native American Religion.

93.   Defendants violated plaintiff's rights under § 5009(a).

## FIFTH CLAIM

Violation of California Penal Code, § 5030.1(a)

94.   Plaintiff realleges and incorporates by reference paragraphs 1 through 93 above as though fully set forth herein.

95.   California Penal Code § 5030.1(a) requires that defendants adopt regulations that exempt approved religious ceremonies from the prohibition of tobacco use or possession by CDCR inmates.

96.   Defendants adopted regulations and policies to exempt religious ceremonies from the prohibition of tobacco use and possession by inmates, but defendants violated the law through its implementation by the custom and practice of defendants of

1  denying plaintiff the use and possession of tobacco for

2  approved Native American Religion ceremonies.

3      97.   Defendants violated plaintiff's right to use and

4  possess tobacco for approved religious ceremonies.

5                      **JURY TRIAL DEMAND**

6      Pursuant to Federal Rule of Civil Procedure 38(b),

7  plaintiff hereby demands trial by jury of all issues properly

8

9  triable thereby.

10                     **PRAYER FOR RELIEF**

11     Plaintiff prays for judgment against defendants that

12 includes but is not limited to:

13     1.   A declaration that plaintiff is entitled to possession

14 of tobacco and other sacred plants for daily prayer and for

15 Sacred Pipe ceremonies, and that he shall have access to

16

17 tobacco and sacred plants for these purposes;

18     2.   A declaration that the plaintiff is entitled to attend

19 the Sacred Sweat Lodge ceremony at least once per week, that

20 the defendants shall provide an appropriate quantity and

21 quality of wood for these ceremonies or allow plaintiff to

22 purchase and have the wood delivered, and that the plaintiff is

23 entitled to smoke the Sacred Pipe at these ceremonies;

24

25     3.   A declaration that the plaintiff is entitled to attend

26 and help organize an outdoor Pow-Wow at least once per year,

27 and that he is entitled to attend and help organize outdoor

28 ceremonies for the solstices, equinoxes and full and new moons,

and that defendants shall authorize ceremonial food for these ceremonies to be consumed communally outdoors during these ceremonies;

4.   A declaration that plaintiff is entitled to commune with and seek guidance from a Native American Spiritual Advisor on a daily basis, and that the defendants shall employ a Native American Advisor to fulfill these purposes;

5.   A declaration that the plaintiff is entitled to receive spiritual packages from the Native American community;

6.   A declaration that the plaintiff is entitled to purchase Religious Items from vendors recognized by the Native American community as having practices consistent with the Native American Religion;

7.   A declaration that the religious trust account for Native Americans and the corresponding budget shall be restored and replenished, retroactive to the time of suspension and depletion by defendants;

8.   An injunction restraining defendants from continuing to restrict plaintiff's use of tobacco and use of the Sacred Pipe;

9.   An injunction restraining defendants from cancelling Sacred Sweat Lodge ceremonies;

10.   An injunction restraining defendants from refusing to hire a NASL;

11.   An injunction restraining defendants from continuing

to restrict plaintiff's right to purchase Religious Items by limiting purchases to $200 per quarter;

12. An injunction restraining defendants from suspending or otherwise depleting the Native American trust account and its funding because there is not a NASL, and thereby denying plaintiff the ability to purchase Religious Items with such fund;

13. An injunction restraining defendants from preventing plaintiff from purchasing and handcrafting certain Religious Items because of their colors or other non-religious contexts;

14. An injunction restraining defendants from adopting policies or taking retaliatory action, including but not limited to segregation or a facility transfer, against plaintiff for exercising constitutional and statutory rights

15. Costs and reasonable attorneys' fees;

16. For such other relief as this Court may deem just and proper.

DATED: September 12, 2008

_____
DAVID DEHNERT
Attorney at Law

LESTOR J. MARSTON
Rapport and Marston

*Attorneys for Plaintiff*